## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                      Case No. 08-Cr-342

JUAN ALBERTO TORRES-MENDOZA,
 a/k/a OSCAR ARANDA-TORRES,
 a/k/a CARLOS M. TORRES,
 a/k/a CARLOS TORRES-MENDOZA,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT

## NATURE OF CASE

    A federal grand jury sitting in this district returned a one-count indictment against defendant Juan Alberto Torres-Mendoza, a/k/a Oscar Aranda-Torres, a/k/a Carlos M. Torres, a/k/a Carlos Torres-Mendoza, on December 16, 2008. The indictment charges the defendant with being found in the United States without the express consent of the United States Attorney General or his successor, the Secretary of the Department of Homeland Security, for re-application for admission after he was previously deported from the United States, in violation of 8 U.S.C. § 1326(a)(2) and (b)(2).

    The defendant entered a plea of not guilty on December 17, 2008, when he appeared before United States Magistrate Judge William E. Callahan, Jr. for arraignment.. Pursuant to the pretrial scheduling order issued at that time, the defendant filed a motion to suppress statements (Docket #8) and a motion to change venue to Green Bay. (Docket #9). The motion

to suppress will be addressed herein. The motion to change venue has been addressed in a separate decision.

## MOTION TO SUPPRESS STATEMENT

On January 30, 2009, the court conducted an evidentiary hearing on the defendant's motion to suppress his statement. At the evidentiary hearing, Michael Crabb, an agent with the Department of Immigration and Customs Enforcement (ICE), testified on behalf of the government and defendant Juan Alberto Torres-Mendoza, testified on his own behalf. Based on the testimony and evidence presented, the court now makes the following findings of fact.

### Findings of Fact

The defendant, Juan Albert Torres-Mendoza, resides in Green Bay, Wisconsin. He is a native Spanish speaker who had lived in Green Bay for about eight years before his arrest. He went to the sixth grade in school in Mexico. He was arrested in Brown County and completed his sentence. On December 4, 2008, the defendant was brought to Milwaukee, Wisconsin for processing for illegally being in the United States without permission. The Department of Immigration and Customs Enforcement office is located in Milwaukee.

At some point after the defendant arrived in Milwaukee, ICE Agent Michael Crabb initiated an interview with the defendant. Agent Crabb had worked for ICE for about 18 months and received training at the federal law enforcement training academy in immigration law and law enforcement tactics, as well as five weeks of Spanish language training. Agent Crabb also had a total of four semesters of Spanish during high school and college. He does not consider himself to be fluent in Spanish and can read Spanish only "to an extent." (Tr. 15).

Agent Crabb interviewed the defendant in an interview room at the ICE office. The defendant was not handcuffed, nor was Agent Crabb armed with a weapon during the

- 2 -

interview. Using a form document, Agent Crabb took a sworn statement from the defendant to basically determine his immigration status in the United States. The information on the form was written in both English and Spanish. Agent Crabb primarily conversed with the defendant in English, but also spoke in Spanish at times. According to Agent Crabb, the defendant was able to understand certain parts of English, such as when the agent asked if he needed water or to make a phone call. The defendant could understand "the simple, the basic English." (Tr. 20). The defendant's answers were responsive to the agent's questions.

Agent Crabb advised the defendant of his constitutional rights in English before he asked him any questions. While he was being questioned, the defendant had a blank form in front of him so he could read along. The form was written in English and Spanish. Agent Crabb asked the defendant if he could read and he said yes. The agent observed the defendant reading along while he asked the questions on the form.

When he asked the defendant in English if he wished to have a lawyer or any other person present to advise him, the defendant responded "yes."[1] The agent then asked the defendant, "entiendes," which in Spanish means "do you understand." Agent Crabb said he could tell by the defendant's body language that the defendant did not quite understand the question. Because he did not believe that the defendant understood the question, the agent decided to explain to him. The defendant did not ask the agent to clarify what the "right to a lawyer" meant.

---

[1] The defendant testified that Agent Crabb asked the question about wanting a lawyer in English (Tr. 43), but later stated that the conversation about the question was in Spanish. (Tr.44). Agent Crabb testified that he asked the questions in English. (Tr. 15-16).

- 3 -

Agent Crabb told the defendant in English that he would not be appearing before an immigration judge because illegal re-entries do not get a court hearing. The agent further explained that he did not know if the defendant would be prosecuted or not, but that there was "a possibility he might spend prison time for his illegal re-entry." (Tr. 16). The defendant agreed to answer the agent's questions. Agent Crabb then scratched out the "yes' answer to the question about wanting a lawyer and wrote "no" as the response to the question. According to Agent Crabb, when the defendant responded to the questions on the form, he spoke in English.

Agent Crabb testified that, during the interview, the defendant asked whether he would be deported immediately or soon after he had completed the interview. The agent responded in English that it "depended" because he was not sure if the case would be accepted for prosecution and, if it was not, perhaps the defendant would be deported immediately or very quickly. (Tr. 18).

The defendant initialed each page of the four-page form which, according to Agent Crabb, indicated that the defendant had read the answers to the questions written down by Agent Crabb and agreed that they were correct. Agent Crabb said that the defendant then signed the document after he read it. No promises or threats were made to the defendant, nor did the defendant request anything during the interview.

Agent Crabb did not recall specific conversations with the defendant. He said the defendant understood some basic English. Agent Crabb testified that he would not classify the right to a lawyer guaranteed by the United States Constitution as basic English. He acknowledged that the right to a lawyer involved "more complex" English. (Tr. 21).

- 4 -

The defendant has required an interpreter for all of his court experiences. He testified that he knows some basic English, but he communicates with his family and co-workers, who are Hispanic, in Spanish. When asked whether he was able to understand what the judge, prosecutor or his lawyer were saying without an interpreter, he said "no." He testified that his knowledge of English beyond the very basic was limited: "No, I mean because I don't know, like talking the way you talk here to explain things, no, I don't know enough." (Tr. 23). The defendant testified that he requested an interpreter during the interview with Agent Crabb, but was advised by the agent that an interpreter was not needed because the questions were written in English and Spanish.

According to the defendant, he could understand Agent Crabb when the agent read from the form in English, because the form also was written in Spanish. He also could understand a few words in English, but he could not understand it the agent spoke to him in English about something that was not on the form in Spanish. The defendant acknowledged that he put his initials on each page because he had read the page and the information was correct. He also signed the document which indicated that everything in the document was accurate.

The defendant testified that he changed his answer about consulting an attorney because "he [Agent Crabb] told me I had the right to an attorney, but he said since there were no papers against me and there would be no case I thought, you know, why would I get an attorney if I'm just gonna be deported right away. I thought, you know, I'm not going to need an attorney if they're just going to deport me right away, so that was what we did." (Tr. 35-36).

## **Analysis**

The Fifth Amendment privilege against self-incrimination and the right to counsel require police to follow certain procedural safeguards during custodial interrogations of a suspect.

Miranda v. Arizona, 384 U.S. 436 (1966). The government bears the burden of establishing that the defendant voluntarily, knowingly and intentionally waived his privilege against self-incrimination and his right to counsel. Id. at 475. To meet this burden the government must introduce sufficient evidence to establish that under the "totality of the circumstances" the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). Specifically, in Moran, the Court set forth a two-pronged inquiry to determine whether a waiver of a right is made knowingly, voluntarily and intelligently:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Id.

"Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." Id. (quoting Fare v. Michael C., 442 U.S, 707, 725 [1979]); see also, North Carolina v. Butler, 441 U.S. 369, 374-75 (197).

A waiver of constitutional rights must be determined by "the particular facts and circumstances, surrounding the case, including the background experience and conduct of the accused." North Carolina v. Butler, 441 U.S. at 374-75. One factor that is considered is any language difficulties encountered by the defendant during custodial interrogation. United States v. Garibay, 143 F.3d 534, 537 (1998).

In support of his motion, the defendant asserts that his waiver of his right to counsel, after initially stating he wanted counsel present, was not a knowing and intelligent waiver. He

asserts that he has a minimal knowledge of English and Agent Crabb obtained his waiver of the right to counsel only after explaining the right in English. Therefore, the defendant contends the government has not met its burden of establishing that the wavier was make knowingly and intelligently.

The government argues that the defendant's contention that he did not understand the agent when he waived his right to counsel in not credible "when weighed against the conflicting testimony of S.A. Crabb and against the backdrop of the defendant's testimony." (Government's Memorandum in Opposition to Defendant's Motion to Suppress Statement at 7). The government also points out that the defendant initiated a conversation about removal to Mexico and that Agent Crabb believed that the defendant understood English.

In this case, there is no dispute that the defendant was advised of his Miranda rights in English by Agent Crabb while the defendant read along in Spanish and that the defendant initialed and signed the form indicating that he understood his rights. There is also no disputed that the defendant initially responded that he wanted a lawyer present. Agent Crabb did not think that the defendant understood the question so he decided to explain the right to counsel to him in English.

Here, the evidence shows that the defendant received a sixth grade education in Mexico, spoke to his family and co-workers in Spanish and only understood "some basic English." (Tr. 21). The evidence also shows that the defendant requested that an interpreter be present at the interview, but Agent Crabb declined his request because the form he was using was written in both English and Spanish. The defendant had required an interpreter at his prior court proceedings. Agent Crabb, who had received five weeks of Spanish language

training as an ICE agent, plus four semesters of Spanish in high school and college, did not consider himself fluent in Spanish. He only can read that language "to an extent." (Tr. 15).

The veracity of the witnesses – Agent Crabb and the defendant – is not an issue in this case. Rather, the problem is a result of the language difficulties involving a defendant with a limited knowledge of English and an agent who was not fluent in Spanish. Initially, in response to the Agent Crabb's question, the defendant said he wanted a lawyer. When Agent Crabb thought the defendant did not understand the question about his right to counsel, he attempted to clarify the right by explaining it to the defendant in English.

The concept of rights based on the United States constitution in not easily understood, particularly for a person from another country with limited English language ability. Agent Crabb acknowledged that the right to a lawyer guaranteed by constitution involves a more complex type of English, not basic English. At the hearing, the court observed the defendant's demeanor and responses to questions posed by both his attorney and counsel for the government. Based on these observations, it seemed clear that the defendant did not understand some questions, including those posed about his rights, without more explanation.

Given the complexity of the concept of the right to counsel under the United States Constitution, coupled with the language difficulties between the agent and the defendant, the court concludes that the defendant did not understand the explanation provided by Agent Crabb, Under the totality of the circumstances, the court concludes that the defendant did not have "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421. Thus, the government has not met its burden of establishing that the defendant's waiver of his right to counsel was knowing and

voluntary. Accordingly, this court will recommend that the defendant's motion to suppress his statement be granted.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **granting** defendant Torres-Mendoza's motion to suppress statement. (Docket #8).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.). Based upon the agreement of the parties, written objections to any recommendation herein or part thereof may be filed within five days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of March, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge